# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **DALE PROGRESS LTD.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **MERCEDES-BENZ USA LLC,** <br><br> **Defendant.** | **CIVIL ACTION NO. 2:18-cv-472** <br><br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Dale Progress Ltd. ("Plaintiff"), by and through its undersigned counsel, files this Original Complaint against Defendant Mercedes-Benz USA LLC ("Defendant") as follows:

## NATURE OF THE ACTION

1. This is an action for violation of 35 U.S.C. §§ 271(a) and 35 U.S.C. §§ 271(b). This is a patent infringement action to stop Defendant's infringement of United States Patent No. 9,686,504 ("the '504 patent") entitled "Remote Resource Access Interface Apparatus". A true and correct copy of the '504 patent is attached hereto as <u>Exhibit A</u>. Plaintiff is the owner by assignment of the '504 patent. Plaintiff seeks monetary damages and injunctive relief.

## PARTIES

2. Plaintiff is a limited liability company having a principal place of business located at #204(#-81), 83, Gasan digital 1-ro, Gasan-Dong Geumcheon-gu, Seoul, 08589, Republic of Korea.

3. Upon information and belief, Defendant is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 4303 Lakeside Pkwy, Coppell, TX 75019. Defendant can be served with process by serving C T Corporation System, 1999 Bryan St. STE 900 Dallas, Texas 75201.

## JURISDICTION AND VENUE

4. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

5. This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

6. The Court has personal jurisdiction over Defendant because: Defendant is present within or has minimum contacts within the State of Texas and the Eastern District of Texas; Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in the Eastern District of Texas; Defendant has sought protection and benefit from the laws of the State of Texas; Defendant regularly conducts business within the State of Texas and within the Eastern District of Texas; and Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Texas and in the Eastern District of Texas.

7. More specifically, Defendant, directly and/or through intermediaries, ships, distributes, uses, offers for sale, sells, and/or advertises products and services in the United States, the State of Texas, and the Eastern District of Texas including but not limited to the Accused Instrumentalities as detailed below.  Upon information and belief, Defendant has committed patent infringement in the State of Texas and in the Eastern District of Texas.  Defendant solicits and has solicited customers in the State of Texas and in the Eastern District of Texas.  Defendant has paying customers who are residents of the State of Texas and the Eastern District of Texas and who each use and have used the Defendant's products and services in the State of Texas and in the Eastern District of Texas.

8. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1400(b). On information and belief, Defendant in incorporated in this district, or has a regular and established business presence in this district with a brick and mortar location at 4303 Lakeside Pkwy., Coppell, TX 75019 and has transacted business in this district, and has directly and/or indirectly committed acts of patent infringement in this district.

## COUNT I – PATENT INFRINGEMENT

9. Plaintiff refers to and incorporates herein the allegations of Paragraphs 1-8 above.

10. The '504 patent was duly and legally issued by the United States Patent and Trademark Office on June 20, 2017 after full and fair examination. Plaintiff is the owner by assignment of the '504 patent and possesses all rights of recovery under the '504 patent, including the exclusive right to sue for infringement and recover past damages and obtain injunctive relief.

11. Defendant owns, uses, operates, advertises, controls, sells, and otherwise provides apparatus and methods that infringe the '504 patent. Claim 2 of the '504 patent provides, among other things, "a remote resource access interface apparatus comprising: a touch input detection unit configured to detect touch input on a display screen and to generate touch position information on a display screen; a communication unit configured to receive supportable key information from a compatible portable device, the communication unit further configured to transmit input key information to the portable device and to receive video information from the portable device; a video output unit configured to display adjusted video information in the form of a visual image, the video output unit having a display screen having a screen specification different from a screen specification of the portable device, wherein the screen specification includes screen resolution information regarding the screen resolutions supported by the portable device; and a key advisor unit configured to output the supportable key information to the video output unit wherein the key

advisor unit is configured to receive the touch position information through the touch input detection unit, and wherein the adjusted video information is video data adjusted to screen resolution supported by the video output unit on the basis of the screen resolution information supported by the portable device, and the touch position information is mapped to one of key values indicated by the supportable key information of the portable device such that the touch position information matches key values of the portable device."

12. Defendant has been and is now infringing the '504 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, directly or through intermediaries, making, using, importing, testing, providing, supplying, distributing, selling, and/or offering for sale apparatus and methods (including, without limitation, the Defendant's products including MirrorLink functionality of the A-Class identified herein as the "Accused Instrumentality") that provide a remote resource access interface device, covered by at least claims 2 and 8 of the '504 Patent to the injury of Dale Progress Ltd. Defendant is directly infringing, literally infringing, and/or infringing the '504 Patent under the doctrine of equivalents. Defendant is thus liable for infringement of the '504 Patent pursuant to 35 U.S.C. § 271.

13. Claim 2 of the '504 patent claims a remote resource access interface apparatus comprising:



4

a touch input detection unit configured to detect touch input on a display screen and to generate touch position information on a display screen;



Analyst comment – MirrorLink supports pointer events and touch events where a pointer event means touching with one finger and a touch event means touching with two or more separate fingers on a touch screen.



a communication unit configured to receive supportable key information from a compatible portable device, the communication unit further configured to transmit input key information to the portable device and to receive video information from the portable device;

6



Figure 1: MirrorLink Concept

Figure 2: MirrorLink Architecture

Source:
ETSI TS 103 544-13 V1.3.0 (2017-10)
Publicly Available Specification (PAS); Intelligent Transport Systems (ITS); MirrorLink®;
Part 13: Core Architecture

**Analyst comment** – The automotive HU has to communicate with a consumer electronic device such as smartphone by using one or more of the connectivity protocols. It means the automotive HU has to have a communication unit.

## 7.4 Event Configuration Messages

The *ServerEventConfiguration* and *ClientEventConfiguration* message pair provides additional information about event handling, i.e. which key and pointer events are natively supported on the VNC Server and Client. This information helps the Server to map specific incoming VNC Client events to Server events.

The message flow is shown in Figure 8.

| 2 | U16 | | Payload length |
|---|---|---|---|
| 2 | U16 | | Keyboard layout – Language code (according ISO 639-1 [9]) |
| 2 | U16 | | Keyboard layout – Country code (according ISO 3166-1 [10] alpha-2) |
| 2 | U16 | | UI Language – Language code (according ISO 639-1 [9]) |
| 2 | U16 | | UI Language – Country code (according ISO 3166-1 [10] alpha-2) |
| 4 | U32 | Bit l | Knob keys (Bit mask according Table A.1)<br>• '1': Client supports knob key events<br>• '0': Client does not support knob key events |
| 4 | U32 | Bit m | Device keys (Bit mask according Table B.2)<br>• '1': Client supports device key events |

Source:
ETSI TS 103 544-2 V1.3.0 (2017-10)
Publicly Available Specification (PAS); Intelligent Transport Systems (ITS);
MirrorLink®; Part 2: Virtual Network Computing (VNC) based Display and Control

**Analyst comment** – The communication unit in the client (=Automotive HU) transmits keyboard layout, various key, and pointer events (=input key information) to the server (=portable device) via *ClientEventConfiguration* message.



a video output unit configured to display adjusted video information in the form of a visual image, the video output unit having a display screen having a screen specification different from a screen specification of the portable device, wherein the screen specification includes screen resolution information regarding the screen resolutions supported by the portable device; and



Source:
Can C-ITS benefit from MirrorLink? Dr. Jorg Brakensejek, Chief Architect and Chair of Technical WG

**Analyst comment** – A video output unit (=automotive head unit) displays the same video (e.g., GPS navigation image) from the portable device (e.g., smartphone) in the form of a visual image. It is well known in the art that their image resolutions are different. Next page tells MirrorLink specification on scaling images due to the resolution difference between a portable device and an automotive head.

10

### 7.3.2 Framebuffer Scaling (VNC Server)

The MirrorLink VNC Server shall down-scale its framebuffer to fit into the framebuffer resolution provided from the MirrorLink Client in the *ClientDisplayConfiguration* message. The MirrorLink VNC Server shall follow the framebuffer down-scaling configurations, as given in Table 10.

**Table 10: Framebuffer Downscaling Configurations**

| MirrorLink Client Framebuffer $FB_{Client}$ | MirrorLink Server Framebuffer $FB_{Server}$ | |
|---|---|---|
| | $FB_{Server} < 1\,024 \times 600$ | $FB_{Server} \geq 1\,024 \times 600$ |
| $FB_{Client} < 800 \times 480$ (MirrorLink 1.0 - 1.2 Clients only) | $FB_{Client}$ or $800 \times 480$ | $FB_{Client}$ or $800 \times 480$ |

### 7.3.3 Framebuffer Scaling (VNC Client)

The MirrorLink Client shall support up-scaling to the framebuffer resolution provided in *ClientDisplayConfiguration* message.

The MirrorLink Client shall provide valid VNC Client display width and height [pixel] within the *ClientDisplayConfiguration* message.

The MirrorLink Client may request a smaller framebuffer resolution from the MirrorLink Server (sending a

Source:
ETSI TS 103 544-2 V1.3.0 (2017-10)
Publicly Available Specification (PAS); Intelligent Transport Systems (ITS);
MirrorLink®; Part 2: Virtual Network Computing (VNC) based Display and Control

Analyst comment – VNC specification tells how to scale framebuffer resolution of the client (=automobile head unit) and the server (=consumer electronic device) since they are typically different. Typically smartphones have much higher resolution than automobile head units.

a key advisor unit configured to output the supportable key information to the video output unit wherein the key advisor unit is configured to receive the touch position information through the touch input detection unit, and



(Multi) Touch

Source:
From MirrorLink to Digital Key
The role of smartphone in the connected car
Dr. Jorg Brakensiek, Chief Architect and Chair of Technical WG

| Message | Origin | Parameter | Mandatory Values |
|---|---|---|---|
| Pointer Event | Client | Button-mask | (as specified in RFB) |
| | | x-position | |
| | | y-position | |
| Client Cut Text | Client | Length | (as specified in RFB) |
| | | Text | |
| Bell | Server | No parameter | (as specified in RFB) |
| Server Cut Text | Server | Length | (as specified in RFB) |
| | | Text | |

NOTE:   For the RFB message structure, please refer to the dedicated RFB specification, as given in [1].

Source:
ETSI TS 103 544-2 V1.3.0 (2017-10)
Publicly Available Specification (PAS); Intelligent Transport Systems (ITS);
MirrorLink®; Part 2: Virtual Network Computing (VNC) based Display and Control

**Analyst comment** – A head unit (=client) has to have a unit equivalent to a key advisor unit to output the supported keys (e.g., navigation configuration keys) to the display unit (=the video output unit) and also communicate pointer and touch events to the server (= smartphone).



wherein the adjusted video information is video data adjusted to screen resolution supported by the video output unit on the basis of the screen resolution information supported by the portable device, and the touch position information is mapped to one of key values indicated by the supportable key information of the portable device such that the touch position information matches key values of the portable device.

The MirrorLink Client shall provide a display, which allows any CCC drive-certified application to be displayed, while the MirrorLink Client is in drive mode. <u>The MirrorLink Client's minimum resolution shall be 800 x 480 on a screen</u> area of size 133,3 mm x 80 mm at a distance of 900 mm. Applications may adapt to the provided screen details, exceeding the minimum resolution, but are not required to do so.



Figure 5: Server and Client Display Configuration

Source:
ETSI TS 103 544-2 V1.3.0 (2017-10)
Publicly Available Specification (PAS); Intelligent Transport Systems (ITS);
MirrorLink®; Part 2: Virtual Network Computing (VNC) based Display and Control

**Analyst comment** – The resolution of a HU has to be <u>minimum 800x480</u> and the display on each HU has different resolution. The video output unit has to adjust images to fit on the resolution supported by the video output unit to display them properly. <u>The server (=portable unit) communicates the server display configuration</u> to the client and video output unit can scale images based on the screen resolution info supported by the portable unit.



Source:
https://www.lelong.com.my/honda-city-2009-dvd-navigation-system-2-mirror-link-oripunva-169902780-2016-11-Sale-P.htm

**Analyst comment** – As shown in a photo of Honda City 2009 DVD Navigation System with 2 Way MirrorLink, the touch position information in the head unit is mapped to the supportable key information of the portable device such that the touch position information matches key values of the portable device. See next page about key event mapping configured via *ClientEventConfiguration* message.



14. Defendant also infringes under 35 U.S.C. § 271(b) by inducing infringement of the '504 patent in the State of Texas, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, advising, encouraging, or otherwise inducing others to operate the apparatus and methods claimed by the '504 patent to the injury of Plaintiff. Defendant actively instructs their customers to use the Accused Instrumentality in a way that infringes the '504 patent. Since at least the filing date of this Complaint, Defendant

has had knowledge of the '504 patent, and by continuing the actions described herein, has specific intent to induce infringement of the '504 patent pursuant to 35 U.S.C. § 271(b).

15. Specifically, Defendant advertises the Accused Instrumentality to its Customers, and instructs its Customers to operate the Accused Instrumentality in a way that infringes, such that when Defendant's Customers follow Defendant's instructions, the '504 patent is infringed.

16. Since at least the filing date of the Original Complaint, Defendant has had knowledge of the '504 patent pursuant to 35 U.S.C. § 271(c), and by continuing the actions described above, by continuing to sell the Accused Instrumentality and instruct their customers to use the Accused Instrumentality in an infringing manner, Defendant has had specific intent to induce infringement of the '504 patent pursuant to 35 U.S.C. § 271(b).

17. Defendant's customers use the Accused Instrumentality as instructed by Defendant and in some cases are set up and installed by Defendant, and in doing so, complete all elements in at least claim 2 and 8 of the '504 patent making Defendant's customers direct infringers of the '504 patent. Defendant specifically intended for its customers to infringe the '504 patent because Defendant continues to advertise and provide to its customers manuals and product information on their website that when followed necessarily infringe the '504 patent.

18. Defendant instructs its Customers, such that when Defendant's customers follow Defendant's instructions, each of said Customers necessarily use the Accused Instrumentality in an infringing manner as claimed in the '504 patent making Defendant's customers direct infringers of the '504 patent.

19. Defendant also infringes under 35 U.S.C. § 271(c) by contributing to infringement of the '504 patent in the State of Texas, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, offering for sale, selling, or

importing the Accused Instrumentality, and advising, encouraging, and contributing so that others can use the apparatus and methods claimed by the '504 patent to the injury of Plaintiff.

20. Specifically, Pursuant to 35 U.S.C. § 271(c), Defendant advertises, sells, and provides the Accused Instrumentality to its Customers, and instructs its customers, such that when Defendant's customers follow Defendant's instructions, each of said customers necessarily infringe one or more apparatus and method claims in the '504 patent making Defendant's customers direct infringers of the '504 patent.

21. The Accused Instrumentalities which are provided by Defendant to its customers, are designed specifically for use by their customers in an infringing manner as claimed in the '504 patent. If the functionality that is embodied in the '504 patent was not present in the Accused Instrumentalities sold by Defendant then these said devices would not work properly for their stated purposes by Defendant in its literature about its products when used together for Defendant's stated purpose and in some cases Defendant's installation of the Accused Instrumentalities.

22. There is no substantial non-infringing use for the Accused Instrumentalities because if the devices were used in a non-infringing manner then they would not work for their stated purpose i.e. specific purpose of the apparatus and/or method, effectively making elements to the apparatus and/or method, completely worthless.

23. Defendant continues advising, encouraging, contributing, or otherwise inducing others to use the apparatus and methods claimed by the '504 patent to the injury of Plaintiff. Since at least the filing date of the Original Complaint, Defendant has had knowledge of the '504 patent, and by continuing the actions described above, has specific intent to induce infringement of the '504 patent pursuant to 35 U.S.C. § 271(b), and has further contributed to said infringement of the

'504 patent by their customers by providing them with the Accused Instrumentalities so that their customers could directly infringe the '504 patent.

24. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

25. To the extent 35 U.S.C. § 287 is determined to be applicable, Plaintiff is informed and believes its requirements have been satisfied with respect to the '504 Patent.

26. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of the Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against the Defendant, and that the Court grant Plaintiff the following relief:

A. A judgment in favor of Plaintiff that Defendant has infringed one or more of the claims, directly, jointly, and/or indirectly the '504 patent;

B. A permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendant and their officers, directors, agents servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the '504 patent, or such other equitable relief the Court determines is warranted;

C. An award to Plaintiff of damages adequate to compensate Plaintiff for the Defendant's acts of infringement together with pre-judgment and post-judgment interest;

D. That, should Defendant's acts of infringement be found to be willful from the time that Defendant became aware of the infringing nature of their actions, which is the time of filing of Plaintiff's Original Complaint at the latest, that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

E. Any further relief that this Court deems just and proper.

Dated: November 7, 2018                     Respectfully submitted,

By: */s/ Austin Hansley*
**HANSLEY LAW FIRM, PLLC**
Austin Hansley
Texas Bar No.: 24073081
13355 Noel Rd. STE 1100
Dallas, Texas 75240
Telephone: (972) 528-9321 Ext. 1000
Facsimile: (972) 370-3559
Email: ahansley@hansleyfirm.com
www.hansleyfirm.com
**ATTORNEY FOR PLAINTIFF**
**DALE PROGRESS LTD.**